Robert G. Drummond
Chapter 13 Standing Trustee
P. O. Box 1829
Great Falls, Montana 59403-1829
Telephone: (406) 761-8600
Facsimile: (406) 453-4663
I. D. Number 0636
Trustee@MTChapter13.com

(Trustee)

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

-----------------------------------------------------------------------------

In re                                          )
                                               )    No. 06-60894-13
MITCHEL B. CLOUSER and                         )
BRENDA S. CLOUSER,                             )
                                               )
         Debtors.                              )

-------------------------------------------------------------------------------------------------

**TRUSTEE'S BRIEF IN SUPPORT OF OBJECTION
TO MOTION TO MODIFY CHAPTER 13 PLAN**

-------------------------------------------------------------------------------------------------

COMES NOW, Robert G. Drummond, Chapter 13 Standing Trustee, and in support of the Debtors' Motion to Modify Chapter 13 Plan represents as follows:

**I. THE DEBTOR'S MOTION TO MODIFY CHAPTER 13 PLAN IS
PROCEDURALLY DEFICIENT**.

At issue in this case is the Debtors' Motion to Modify Plan After Confirmation (Docket #38). The Trustee has objected to the motion. The Debtors filed a Motion to Modify Chapter 13 Plan and purport that the motion is filed under 11 U.S.C. § 1329. The motion does not constitute a modified Plan meeting the requirements of a Plan under 11 U.S.C. § 1322. F.R.B.P. 3015(g) provides that a request to modify a plan shall be filed together with the proposed modification. Here, the request to modify appears to be the modification. The proposed Plan does not provide for the submission of future earnings. The Plan simply provides that "Debtors will refinance

5380.wpd                                      1

their residence" and that the funds will be used to payoff the first lien owed to Wells Fargo Bank and "judgements that are liens against the debtors' real property." No term of Plan is specified. No deadline for refinancing is set. Paragraph 4 provides that any remaining funds will be paid to general "unsecured creditors pursuant to the plan." Thus, the motion apparently references the class of unsecured creditors under the confirmed Plan. The Motion does not reference allowed unsecured claims, but instead references "creditors" - an apparent reference to scheduled creditors rather than allowed claims.

The effect of the proposed "modification" is that the Debtors seek to change Paragraph 1 of the confirmed Plan by paying an unspecified amount to the Trustee to pay unsecured creditors. That amount would have to be calculated to pay administrative expenses and leave $43,000 to be paid to the class of unsecured creditors. The confirmed Plan, which provided that the Trustee pay the arrearages owed to secured creditors, is apparently deleted by the Motion to Modify Plan - Paragraph 2 that provides that the funds will be "used by the Debtors" to payoff the first lien owed to Wells Fargo Bank and unspecified judgement lien holders. The amount to be paid to Wells Fargo is not specified - and the claim is not referenced by number. Thus, funds from the sale will be paid in a fashion that is not determined by the proposed modification. There is no way anyone can tell how much will be paid to Wells Fargo and these judgement lien holders. No claim amounts are specified.

If the Debtors are seeking to prepay their Chapter 13 Plan, at the very least they should be required to pay the remaining payments due under the Plan, totaling $67,830.00. This would be consistent with the confirmed Plan which provided that the arrearages would be paid through the Trustee, together with funds necessary to pay a portion of the class of general unsecured creditors. This Court should hold that the Plan does not constitute a modification meeting the requirements of 11 U.S.C. § 1322(a). If they are proposing a modified Plan - the motion should be denied because the modified Plan does not meet the requirements of 11 U.S.C. § 1322 (b) or F.R.B.P 3025(g). The Debtors' argument - that the Plan does not need to meet the disposable income requirement appearing at 11 U.S.C. § 1325 (b) - is moot. Likewise, the Debtors' reliance on the *Sunahara v. Burchard* (*In re Sunahara*), 326 B.R. 768 (B.A.P. 9th Cir. 2005), is
5380.wpd

2

06-60894-RBK    Doc#: 42    Filed: 08/24/07    Page 2 of 7

misplaced. This issue is not one of modification under 11 U.S.C. §1329.

This Court should determine that the Debtors' motion does not constitute a modified Plan. It is a motion to make the remaining payments due under their confirmed Plan all at once. That gives rise to the second issue.

## II. THE APPLICABLE COMMITMENT PERIOD IS TEMPORAL AND NOT A SIMPLE MULTIPLIER.

The Debtors are operating under a confirmed Plan filed after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The issue before the Court is whether the term "applicable commitment period" means the term of the plan, or whether it simply is a number that, multiplied by the projected disposable income, determines the funding necessary for payment to the class of general unsecured creditors. This Court should determine that the applicable commitment period is "temporal" and not a multiplier and that the phrase means that Congress intended that the applicable commitment period determines the period of time that the plan must run. See, *In re Frederickson*, 2007 WL 1453061 (E. D. Ark. 2007); *In re Pohl*, 2007 WL 1452019 (Bankr. D. Kan. 2007); *In re Mullen,* 2007 WL 1452234 (Bankr. D. Or. 2007); *In re Beckerle*, 2007 WL 1111264 (Bankr. D. Kan. 2007); *In re Lutton*, 2007 WL 756373 (Bankr. W.D. Ark. 2007); *In re Strickland*, 2007 WL 499623 (Bankr. M.D. N.C. 2007); *In re Casey,* 2006 WL 3071401 (Bankr. E. D. Wash. 2006); *In re Cushman, 350* B.R. 2007 (Bankr. D. S.C. 2006); *In re Davis,* 348 B.R. 449, 456-459 (Bankr. E.D. Mich. 2006); *In re Nevit*, 2006 WL 2433491 (Bankr. N.D. Ill. 2006); *In re Gress,* 344 B.R. 919, 923 (Bankr. W. D. Mo. 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006); *In re Dew,* 344 B.R. 655 (Bankr. N.D. Ala. 2006).

The Trustee's objection is based upon 11 U.S.C. § 1325, which provides in pertinent part

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

5380.wpd

3

...

(4) For purposes of this subsection, the "applicable commitment period"--

    (A) subject to subparagraph (B), shall be–

        (i) 3 years;  or

        (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than–

            (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

            (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;  or

            (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; ....

Thus, 11 U.S.C. § 1325(b), the disposable income requirement, was amended under BAPCPA to reference the "applicable commitment period" to compute the payments that must be made to "unsecured creditors under the Plan."  Under this requirement, above median income debtors were to fund their plan with "projected disposable income to be received" in the "applicable commitment period."  Thus, 11 U.S.C. § 1325(b)(4) states that above-median income debtors, as in the case at hand, are subject to an applicable commitment period of  "not less than five years."

Blacks Law Dictionary defines a "period" as "any point, space or division of time."  BLACK'S LAW DICTIONARY 593 (5th ed. 1990).  11 U.S.C. § 1325(b)(4)(B) supports the temporal requirement by defining the applicable commitment period and stating that the period may be less than 3 or 5 years "but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period."   The legislative history of BAPCPA also references the applicable commitment period and states, "The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. *House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess.70 (2005)*).

From the bench, the Court referenced the case of  *In re Mathias,* 367 B.R. 629 (Bankr.N.D. Ill. 2007).  The *Mathias court* agreed with the minority position and held that the

applicable commitment period was a simple multiplier. The error in the reasoning of *Mathias* is that its application would determine that there is no limitation on the term of plans and renders the requirement meaningless. If the applicable commitment period is a simple multiplier, debtors could propose Chapter 13 plans in excess of five years, and determine any period of time in which to pay their creditors. Under that reasoning, Chapter 13 plans could run for a period of zero months and pay nothing to the unsecured creditors. Under such circumstances, the reference to the applicable commitment period would be superfluous.

The more well reasoned analysis is that of *In re Slusher,* 359 B.R. 290 (Bankr. D. Nev. 2007). This Court should determine the *Slusher* case correctly reasoned that the period is temporal, rather than a simple multiplier. That court reasoned:

> This pre-BAPCPA view of Section 1325(b)(1)(B) is only further strengthened by other changes implemented in BAPCPA. $_{FN24}$ Section 1325 clearly states that the "applicable commitment period" "may be less than 3 or 5 years, whichever is applicable ... but *only if* the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B) (emphasis added). Why would Congress include this provision if all that was required of a chapter 13 debtor was to pay a set amount of money under the plan? Under the monetary view, Section 1325(b)(4)(B) is rendered at best a tautology, and at worst entirely surplusage. *See In re Davis*, 348 B.R. 449, 455 ("Under this interpretation of ACP, § 1325(b)(4)(B) doesn't really state anything more than that a debtor does not have to pay more than 100% on his unsecured claims").
>
> Understanding "applicable commitment period" as meaning a time period is also in accord with the changes Congress implemented to Section 707(b), governing above-median debtors in chapter 7 cases. Congress added the means test to ensure that above-median debtors who could afford to repay their creditors were required to do so by entering chapter 13. Alane A. Becket & Thomas A. Lee III, *Applicable Commitment Period: Time or Money?*, Am. Bankr.Inst. J. 16, 44 (March 2006). Under the multiplicand view, however, the expressed congressional intent behind BAPCPA would be thwarted.
>
>> If the ostensible purpose of the means test was to direct more Chapter 7 debtors into Chapter 13 to facilitate voluntary repayment to unsecured creditors, it seems unlikely that Congress would have so changed Chapter 13 as to now allow a debtor to pay a pre-determined discount price (which in many cases will be zero) to her unsecured creditors as and when the debtor chooses, and exit Chapter 13 without either having an ongoing commitment to make her best efforts over some required period of time to repay her creditors, or having ever subjected her assets to be administered for the benefit of those creditors by a trustee, as would occur in a Chapter 7 case.
>
> *In re Davis*, 348 B.R. at 457.
>
> As discussed in *Davis*, the essence of a chapter 13 case is that the debtor has made an ongoing *commitment* to provide all disposable income over a period of time to repay

creditors. *Id.* The use of the word "commitment" within "applicable commitment period" exemplifies this congressional goal, implying that the debtor has an ongoing obligation. With an ongoing obligation by the debtor to remain in bankruptcy for the plan term, interested parties can monitor the debtor and capture any increases in the debtor's income during that time. Treating "applicable commitment period" as a multiplicand defeats this purpose by allowing a debtor to use chapter 13, with its expanded discharge, to determine at the outset of the chapter 13 case a set amount owed to creditors. Thus under this view, chapter 13 is simply an alternate form of "lump-sum" payout to creditors, but one in which the debtor is not required to use any prepetition assets and from which he is discharged from several otherwise nondischargeable debts. Under any stretch of the imagination, this court does not believe that such a result was what Congress intended by enacting BAPCPA.

> FN24. The legislative history for BAPCPA, although scant, provides some indication that Congress intended a temporal meaning for "applicable commitment period." The House Report relevant to this change states:
>
> *Chapter 13 Plans to Have a Five-Year Duration in Certain Cases.* Paragraph (1) of § 318 of the Act amends Bankruptcy Code §§ 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceed certain monetary thresholds.... The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period.
>
> H.R. Rep. No. 109-31, pt. 1, 1st Sess. 79 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 146.

*Slusher* at 303-304.

In return for the benefits offered by Chapter 13, the debtor must commit future income to fund the plan. 11 U.S.C. § 1322(a). To be eligible for relief under Chapter 13, the debtor must have "regular income." 11 U.S.C. § 109(e). That income must be stable and regular. *In re Antoine*, 208 B.R. 17 (Bankr. E.D. N.Y. 1997). Thus, the only harmonious reading of the statute is that of a temporal requirement, which requires that the debtor commit future income over a period of time. This is consistent with pre-BAPCPA law because prior to the 2005 changes, the debtor's plan could not be confirmed unless the debtor could show that he had disposable income. Thus, it worked to use that figure as a multiplier. However, the changes made by BAPCPA render the previously used "multiplier" useless. A debtor can fund a plan but still have no disposable income as determined by the formula specified in the statute. Thus, the change also requires a change to a temporal requirement.

The *Slusher* court also noted that such an interpretation would work harmoniously with

other changes made under BAPCPA. The court noted that ongoing income reporting requirements under 11 U.S.C. § 521(f) would be consistent with the interpretation that the requirement is temporal. The court also noted that the changes to 11 U.S.C. §707(b) were consistent with this interpretation.

This Court should determine that the changes made under BAPCPA require that the commitment period be "temporal" and that such interpretation is consistent with other changes under BAPCA. This Court should determine that Congress intended a literal interpretation of the phrase "applicable commitment period' and that the Debtor must be in the Plan for a period of five years.

DATED this 24th day of August, 2007.

                            Chapter 13 Standing Trustee
                            P. O. Box 1829
                            Great Falls, Montana 59403-1829

                            By /s/ Robert G. Drummond
                                 Trustee